Counsel, you may proceed. Good morning, Your Honors. May it please the Court, my name is James McAdams. I represent the claimant and appellant Kevin Keenan. I would like to reserve two minutes at the end. This case arises under the Longshore and Harbor Workers' Compensation Act. The issues presented primarily have to do with calculation of permanent partial disability to be paid to an injured worker who had two shoulder surgeries and residual impairment as a result of those surgeries. The Act itself primarily sets forth a system of compensation in Section 8. It starts with 8C1, which has to do with compensation for arm injuries, through 8C21, which has to do with compensation for all non-scheduled or other injuries. So the first issue is, should the shoulder injury here, with the residual shoulder disability, be characterized as an arm injury for purposes of payment of compensation or not? It's the claimant's contention that the shoulder should be considered an arm injury for purposes of payment of compensation. Mr. McAdams, how do you get around our decision in Long v. the Director on that point? Well, he had a lot to say about several different things, and I don't think that it is inconsistent with that decision. A careful reading of all the cases in which these issues have come up, scheduled versus non-scheduled, whether you can have scheduled and non-scheduled awards together, whether a neck can also include scheduled awards for the arms or a back can include scheduled awards for the legs, these sorts of things. Very often, as the decisions are decided, there is a deference to the judge to make an award based upon the facts of the case and also to consider the best interest of the claimant for the beneficial purposes of the act. I don't disagree with anything you've said, but let me go right to the heart of my concern. As I read the Supreme Court decision in, I guess it was Metropolitan, Stevedore & Company v. Rambo, the Court makes the comment that Congress could have chosen a tort prospective compensation system had it wanted to do so. Exactly. But they didn't do it for the Long, Sherman & Harbor Workers' Compensation Act. And without being unfair in characterizing your argument, it seems to me that that's what you're asking us to do here. And, I mean, there is a compensation scheme that has scheduled injuries and non-scheduled injuries. And how do I get around what the Supreme Court told us there? That no one on a court ever decided that the arm did not include the shoulder. Well, has any court ever decided the other way either? No. So we don't know. We have to rely on the plain wording of the statute. And if you look at the plain wording of the statute, arm generally and most common usage, and I think also for purposes of this statute for many years, included the shoulder. The Benefits Review Board made a specific decision that the shoulder should not be considered as a part of the arm for purposes of compensation for permanent partial disability. In the Grimes case in 1981, following the Supreme Court's decision in PEPCO. That's the history of it. And the Benefits Review Board had a very laudable reason at the time. We want to make sure people who have some earning capacity are compensated on a non-scheduled basis for their ongoing wage loss. Unfortunately, it left out all those people who go back to work who may have serious permanent disabilities and potentially even some wage loss, but they can't be compensated if their earnings go up under the schedule. And that's really what we're talking about here today. It's as if because the elbow is not specifically mentioned in the act, it can't be considered part of the arm. That's got to be a non-scheduled injury. Someone has a fractured wrist. Well, the wrist really isn't mentioned in the act. The hand is. The arm is, but not the wrist. And so, therefore, it can't be considered a scheduled part of the body under the act. People who have serious injuries to the elbow, elbow surgery, will be compensated generally for permanent partial disability in the arm. What about leg and hip? It's the same situation with the leg and the hip. Hip has been construed to be non-scheduled? By the Benefits Review Board. And it's the same situation. But now the wrist, you say, is or isn't scheduled? The wrist has not been defined per se. I think it's just sort of been assumed that it's part of the arm or possibly the hand. And we get into those same considerations there. Is it a hand or is it an arm? Well, you see different judges treat it in different ways depending upon the nature of the injury and the residuals. Is it necessary in this case to get a judicial decision on whether the junction of the scapula and the clavicle is a part of the arm or a junction between other body parts? I believe it is, Your Honor, for one simple reason. The Benefits Review Board has consistently followed its decision in Grimes ever since 1981. And there are other BRB decisions that are cited in the briefs that follow that decision. The Administrative Law Judge in this case said, I really wish that I could give Mr. Keenan a scheduled award of disability based on the obvious impairment he has in his shoulder. But I feel constrained by Grimes, which is a BRB decision which I'm obliged to follow as an Administrative Law Judge, to say that this is a non-scheduled injury. And for that reason, I think this Court needs to make a decision on that issue. And for all the people who have shoulder injuries, that will at least open them up. Well, I was wondering if this was some sort of a class action that was being smuggled in here on this case. It definitely is not. Are you trying to get the toe in the door? Well, the toe is mentioned as our leader's individual. I wanted to ask another question. Is there, in the opinion of the Board, they said there is now evidence on his work activities for almost nine years since permanency. Reflects whatever concerns there were about the wage earning effect on the claimant. And considering the new longshoreman rules and union rules and so on. The claimant's post-injury wage earning capacity has not suffered thereby. Is that a finding? Or is that a fact? Well, that's a purported finding based on the fact that his earnings have gone up. And especially since his job classification changed from being a longshoreman to a marine clerk, where he can work more hours per shift. Well, that leads me to the next question, which, because I think we understand each other on that. If he were to get the de minimis award to protect him against future changes that might occur in his earning capacity, why would it be necessary for us to decide on a just on an abstract question whether the arm is part of the arm, whether the shoulder is part of the arm? Well, if you decided to follow... If he gets the de minimis thing, it won't matter, will it? Well, it will. Because if he's given the scheduled award, he, in fact, will be compensated monetarily more than he ever, in all likelihood, would be with the de minimis award at some point in the future. If marine clerk's work is abolished or if there's some calamity at the port of Los Angeles and the ships stop coming in and he no longer had that work available to him, well then, frankly, the de minimis award would protect him under those circumstances. Well, since I started trying longshoreman cases 45, 50 years ago, there have been so many technological changes in the industry. It's unbelievable that an 80-pound woman can sit on a keyboard and do things with those cranes that are magical, and they don't have to have arms, shoulders, or anything. There's no question that that's true for marine clerk's work. If that work is preserved and maintained in the future, one could reasonably conclude that he would be able to continue to have that accessible to him. I would raise one other hypothetical situation. What if his shoulder injury deteriorated to the point where he had to have additional surgery, possibly a fusion of the joint at that point? Then he wouldn't be able to even perform the repetitive clerk's work because that's a 10-hour-a-day occupation, and he has to do repetitive use of it. That's why he makes the pitch for the de minimis. That's correct, Your Honor. Okay. Well, why don't you save the rest of your time. Thank you very much, Your Honor. We'll hear from the board. Good morning. Good morning. May it please the Court, my name is Cindy Gutierrez, and I'm counsel representing the respondent, Eagle Marine Services. This Court should affirm the decision by the Benefits Review Board denying permanent partial disability benefits to the petitioner pursuant to the Longshore and Harbor Workers' Compensation Act. The Benefits Review Board's decision should be affirmed for several reasons. First, the statutory scheme of the Longshore and Harbor Workers' Compensation Act does not permit an award of compensation for a shoulder injury as a scheduled impairment pursuant to Section 908c1 of the Act. This is particularly evidenced by this Court's decisions in Long and Todd Shipyard Corporation v. Allen, as well as persuasive decisions in the Fifth Circuit in Poole Company v. the Director of the LWCP and the First Circuit in Barker v. U.S. Department of Labor, as well as the Benefits Review Board's decision in Grimes. Secondly, despite employees' post-injury earning capacity having increased, a putative loss of a foreman position does not establish a loss of wage earning capacity on an unscheduled basis pursuant to Section 908c21 of the Act. Again, this is evidenced by this Court's decision in Sestich that an argument like that is, in fact, irrelevant whether or not a foreman position equates a loss of wage earning capacity, as the Court in Sestich indicates that it is the actual post-injury earning capacity and not the tort system, as mentioned previously, that dictates a loss of wage earning capacity. And finally, Your Honors, the administrative law judge, based, as a trier fact, made factual findings affirmed by the Benefits Review Board and supported by substantial evidence to determine that the petitioner had not proven the need for a de minimis award. And that decision was made pursuant to the U.S. Supreme Court's decision in Metropolitan and Stevedore & Company v. Rambo, also referred to as Rambo II. Now, the first issue is whether or not the petitioner can recover for a scheduled injury based on an injury to the shoulder. And I would refer the Court to the decision by the U.S. Supreme Court in Potomac Electric Power Company v. Director OWCP, a case that's also referred to as Pepco. In that case, the U.S. Supreme Court defined the two ways that a claimant can recover for permanent partial disability benefits and specifically identified the schedule first as that being set forth in sections 908C1 through 20. And secondly, it said that in all other cases, in all other cases, section 908C21 authorizes compensation. The Pepco court held that a claimant cannot elect between recovery, between the schedule or 908C21, and indicated that 908C21 applies to any injury. They looked at the plain language of the statute, and any injury that is not included in the list specifically indicated in the statute in 908C1 through 20 would fall under the compensation award of 908C21. What about wrist? Wrist isn't specified. I'm sorry, Your Honor. Wrist is not specified. Is that an unscheduled injury? There is the argument, Your Honor, that, for example, as counsel mentioned, that the elbow may be considered as part of the arm. And the wrist. And the wrist also is part of the arm. And they're not listed specifically in the schedule, but they are considered part of the arm for purposes of the schedule under 908C1. Right. So why is shoulder not an ex- If there's medical evidence that the shoulder is treated as part of the arm structure, why would it be inconsistent to interpret shoulder as part of the arm, much as elbow and wrist as one goes down that body part? Your Honor, anatomically, one could argue that the shoulder is not part of the arm the same way the elbow is. Anatomically, for example, the glenoid or the shoulder is a joint as part of the scapula, scapula that makes up the axial skeleton, whereas the elbow is part of the appendicular. You've got the humerus and the forearm with the elbow in between, and that becomes part of the arm. Anatomically, the shoulder does not lend itself to be considered part of the arm. And also, Your Honors, I would also bring your attention that cases where impairment to the arm have been determined, the fact that the original site of the injury being the shoulder, despite the fact that there's impairment to the arm, the courts still indicated that 908C21 governed, and that would be as an unscheduled injury. In Long v. This Court's decision in Long v. The Director of the OWCP, this court took the back, an unscheduled injury, which caused impairment to the leg, a scheduled injury, and indicated that in that case. I understand what Long does, but, you know, Long was the back and it was talking about the leg. I mean, the body is interconnected in many ways, so I understand that. I'm just trying to understand because, at least in the briefing, there was a suggestion that there's significant medical thought that would medically justify considering the shoulder as part of the arm. Not as an incidental effect as in Long, where the back injury led to, I mean, you could have a brain damage and it can affect the whole side of your body, but the brain is separate clearly. But where it's that proximate in the line, that's why I was asking, you know, as you've answered, you've gone up and said, well, at some point, the arm quits and some other body starts. And what I draw your attention to, Your Honor, is, for example, the persuasive decision in the Fifth Circuit, Poole Company v. Director OWCP, where they were, in fact, discussing the shoulder injury causing impairment to the arm very analogous to the facts at hand in this case. And in that decision, the Fifth Circuit indicated again that 908C21 is what should be used in order to determine compensation. Again, they discuss and they separate the fact that the shoulder has always been considered an unscheduled injury. There are many court cases that indicate that, and decisions that indicate that the shoulder is an unscheduled injury. And the fact that the Poole Court discussed that and discussed impairment to the arm resulting from that injury and still determined that section 908C21 governs compensation is persuasive, as well as the fact that the Poole Company court used this court's decision in Long and the reasoning in Long to make their determination. They used the court's analysis to determine that a shoulder injury resulting in arm impairment still is under the scheduled award of compensation for 908C21. I'm aware of the case. Thank you. Secondly, Your Honor, the Petitioner has indicated that if this Court were to find that the case is, in fact, unscheduled, that the loss of a foreman position equates to a loss of wage-earning capacity pursuant to section 908C21 of the Act. So the alternative argument is being made that if, in fact, you determine that the shoulder injury is unscheduled, that the loss of the foreman job is persuasive. However, the administrative law judge had evidence presented to her and decided that the evidence presented was not persuasive and that it did not enhance its overall presentation and determined that the foreman position did not equate to loss of wage-earning capacity. And, of course, as indicated, the Sestich Court, this Court, indicated that that argument is, in fact, irrelevant. In Sestich, the Court determined that loss of wage-earning capacity is determined by actual post-injury earnings. And what the Petitioner would like to do is use a tort system test, a but-for test, that in order that the fact that he did not obtain this foreman position has put him in a position worse off than he was prior to his injury. But, again, Your Honors, based on the Sestich decision, that is not the test of its case. The test for this case is what was he receiving, what were his earnings at the time of the injury. The Petitioner was making approximately $60,000 before his injury. This has more than doubled since the time of his injury. He's in a better place than he was. His argument is that he had to forego the foreman position because he couldn't perform the functions, therefore he would have gotten it. And so that would have been his actual, but because he can't take it, therefore he doesn't get the ability now to say, well, I've had it. What if he had taken it, for example, and after a couple months on the job proved that he couldn't do it, he had to revert back to his marine clerk position? What would be the situation there? Your Honor, again, I would refer back to the decision in Sestich where the exact or analogous facts were part of that case where in that case the claimant wanted to work as a crane operator but could not and had to revert back to marine clerk. The Court indicated that the argument was that but for the industrial injury, his earnings would have exceeded had he been able to take the crane operator position. That's the same position being taken by the Petitioner, but that Court ruled that that is not an accurate or appropriate argument pursuant to Sestich. Your Honor, as I see that, my time is up. Can I have a brief moment to conclude? Yes. Why don't you spend a minute on de minimis? Thank you, Your Honor. Your Honor, the Petitioner also indicates that if he has not provided a loss of wage earning capacity pursuant to an unscheduled award, that a de minimis award should be granted to him. In Metropolitan Stevedore & Company v. Rambo, the Court indicated a worker is entitled to nominal compensation when his work-related injury has not diminished his present wage earning capacity under current circumstances. But there is significant potential that the injury will cause diminished capacity under future conditions. At the time of trial, the Administrative Law Judge rejected the de minimis award. I think we're familiar. You're just repeating what's in your briefs. Do you have anything else to say about it? What I would argue, Your Honor, is that the Petitioner hasn't indicated anything to show that the Administrative Law Judge found anything in error. He's just claiming that this is a lifetime injury. He deserves a de minimis award, because maybe... He hasn't met the significance standard. Yes. He hasn't met the standard, Your Honor, that he will significantly be impaired in the future. Okay. Thank you. All right. Thank you. Be assured, we read the briefs and we know the arguments. We're looking for some supplemental enlightenment in these question-and-answer sessions. And with that fact in mind, Your Honor, I see I have about 19 seconds left. Why don't I just take any other questions? Why don't you answer the question that was left by your colleague as she left? On the de minimis measure? Yes. How is the ALJ incorrect in finding that there's not a significant possibility? Any time you have two surgeries to the major shoulder joint with a lifetime limitation on the work you can perform, and there's no medical dispute in the record whatsoever that he has those ongoing restrictions that have prevented the kind of work he could do, and that he's had to select work based on those restrictions. Given that fact alone, that makes it significant in itself, and I can tell you that that's one of the major factors that the Supreme Court considers in Rambo. On the economic part of it, just very briefly, higher wages do not necessarily mean that there's no loss of wage-earning capacity. You can have loss of wage-earning capacity even in the presence of higher wages. It's granted by all here that generally higher wages are going to indicate that the person has recovered their loss of wage-earning capacity. But whereas here somebody has a lifetime physical limitation that does not allow them to do certain work, such as long-shoring work, flashing, that sort of thing, that's going to be a That's correct. Got the point. Thank you very much. I thank counsel, both of you, for good arguments. The case that's argued is submitted.
judges: Goodwin, Fisher, Tallman